Good morning, Your Honors, and may it please the Court, Evan Rose, on behalf of Petitioner Otto Perez Castillo, I'd like to reserve two minutes, if I may, for rebuttal. Please proceed. This Court has jurisdiction over Mr. Perez Castillo's petition for review. That petition was timely filed within 30 days of the entry of the order that marked the conclusion of the removal proceedings following the BIA's order remanding the case for consideration of voluntary departure. That order was a final order of removal under Section 1101A47 of the Immigration and Nationality Act. Neither Pinto and Rizzo nor Singh preclude this Court from exercising jurisdiction over Mr. Perez Castillo's petition. Under Pinto and Rizzo, he could also have sought review from the BIA's order remanding his case to the immigration judge, but nothing in those cases forecloses him from also seeking review after the proceedings on remand are complete. That is, the proceedings that mark the consummation of the agency's decision-making process and conclusively determine Mr. Perez Castillo's rights and obligations as a result of the removal proceedings. But Singh is what then says you can't do this twice. You lost your chance if you didn't do it the first time, right?  In Singh, this Court held that it lacked jurisdiction over a petition that was filed after the conclusion of proceedings on remand for advisals related to a prior grant of voluntary departure. In that situation, I think the BIA's order could reasonably be said to be the order that marks the consummation of the agency's decision-making process. But that's far afield from the situation here, where the BIA remanded not merely to provide advisals to ensure that Mr. Perez Castillo was aware of all the conditions that attended a grant of voluntary departure that had already been granted. Instead, it was a remand for consideration of whether Mr. Perez Castillo was eligible for relief at all. The distinction between the two. And how is that different? Well, Your Honor, I believe the distinction between advisals and a remand for consideration of eligibility for relief is supported by the language of the statute of 1101A47 itself. When the BIA remands for advisals, it's in effect affirming the IJ's order granting relief. It's just a purely administrative proceeding where the IJ has to provide, is required to provide certain information about the conditions. But that's, there's still, when, here, by contrast, when the BIA remands for consideration of whether to grant voluntary departure, there's still an ongoing decision-making process at the agency that, going on on remand. Although, I mean, it seems to me the main thrust of your argument, which I appreciate, is the illogic of having anything other than a single clear date so that the Petitioner can know when it is he's supposed to try to come to the court of appeals. The alternative argument, which seeks to distinguish Singh, provides an even more I appreciate that, Your Honor. I don't believe that the rule that we're advocating is more confusing because, although under Pinto and Riso, a non-citizen does have the ability to petition from the BIA's remand order, if you adopted our reading of Singh, that is when the BIA remands for consideration of whether to grant voluntary departure relief, the non-citizen could always wait until the end of proceedings on remand. So it's not requiring the non-citizen to both file a petition for review from them. Are there any instances you can think of or any examples of where there are two different potential appeal points or, in our case, petition for review points? The one sort of classic one would be in the situation of where there's a motion to reopen or for reconsideration that, by statute, there's necessarily, of necessity, two petitions that are then consolidated. In other contexts. They're consolidated if there have been two petitions, but if somebody waits until after the motion to reopen has been resolved by the agency, your petition at that moment is limited to the motion to reopen. The second petition doesn't open the door to complain about what happened the first time, and that won't work for you here because you don't want to limit our review to what happened on the voluntary departure final step. So can you think, are there any other examples of where you suggest there are two windows, but going through window number two is sufficient to reach issue number one? I would say not in the immigration context off the top of my head, Your Honor, but I would say in the context of, say, a denial of qualified immunity, there's an opportunity for the officer or the city to appeal that denial or any interlocutory appeal where there's an opportunity for interlocutory review, but the decision not to seek interlocutory review at that point doesn't foreclose a decision that covers all of the merits after a final decision is entered. But what do we do with the language of the statute that says that the petition for the final order, as if there's only one? Your Honor, I certainly agree that a better rule, and I think the government also agrees that a better rule would be a regime where there is just one time where the petition becomes, where the order becomes final, and that was sort of what appeared to be the case after Abdisalan, where this Court said it was establishing a straightforward rule that there's no final order until all the proceedings on remand are complete. Of course, in Abdisalan in footnote 8, right, it carves out remands for voluntary departure, but I think the — And doesn't make the distinction you want us to draw with Singh at all. Well, Singh hadn't been decided at that point. No, I understand, but it doesn't say certain types of remands for voluntary departure. Certainly, Your Honor. And absolutely, if, you know, if the Court doesn't believe that it's possible to cabin Singh, Pinto, and Riso, we would urge the Court to convene en banc to clarify this, because I think ultimately the combination of Pinto — We don't certify cases en banc. You can petition for en banc, but the en banc Court does. The panel never certifies. I appreciate that, Your Honor. Yes, thank you. We'll certainly — Well, the question of whether the Court should take this case up en banc to address the issue brings us at least briefly to the question of how strong your client's case is if the merits are reached. A case that's powerful on the merits is going to be more attractive, and you know the process of this Court, more attractive for the rest of the Court to decide to take up en banc. And one of the concerns I have about this case is that your client's case doesn't seem particularly strong on the merits. Is there something you could say to us that might improve its appearance? Well, I'd say, Your Honor, that first of all, I think that irrespective of Mr. Perez-Castillo's case, I think it's incredibly important to have a consistent rule across the board that avoids noncitizens, no matter the merits of their case, from being deprived of the opportunity for judicial review as a result of confusion about the rules about timeliness. But with respect to Mr. Perez-Castillo's case in particular, I believe all we're seeking here is a remand for the BIA to provide appropriate reasoning. This Court routinely remands in situations where the BIA has not provided adequate reasoning for the dismissal of a case. And here the BIA appears to have acknowledged, unlike the IJA, appears to acknowledge that being a former soldier is a cognizable social group, but it simply stated that Mr. Perez-Castillo hadn't established eligibility on that ground without any further reasoning. And that certainly doesn't satisfy the BIA's obligation to state with particularity the reasons for its decision. And nor did the BIA even address the fact that Mr. Perez-Castillo's father had been apparently kidnapped and likely killed by the same guerrillas that had, have been creating problems in Guatemala for decades. And that... Although his mother and brother appear to have remained in Guatemala without harm. That's true, Your Honor. But Mr. Perez-Castillo was living with his father before he fled the country. His father was a field worker with no political connections. So I think Mr. Perez-Castillo was deemed credible by the IJA. He testified plausibly that he believed his father had been kidnapped and likely killed by guerrillas. That testimony is supported by the country conditions reports that indicate there's still widespread forced disappearances, killings, kidnappings going on in Guatemala. And... I mean, again, as Mr. Perez-Castillo was... Was his father also a former member of the military? No, he was just a field worker, Your Honor. So from what Mr. Perez-Castillo, and I see I'm out of time, but from what Mr. Perez-Castillo heard from members of his former community was that this was the same guerrillas that had been involved. And I think the understanding is that there was a connection between Mr. Perez-Castillo's military service and his father because Mr. Perez-Castillo lived with his father after he left the military and before he fled to the United States. Thank you, Counsel. I'll still give you a minute for rebuttal. Thank you, Your Honor. We took you over your time. May it please the Court. I'm Jonathan Robbins here on behalf of the Acting Attorney General. Good morning to all of you. Good morning. I agree with my colleague that there needs to be a consistent rule, but the government respectfully submits that there already is a consistent rule in this case. Pinto was the law at the time Petitioner was required to file his petition for review. There's since been Rizzo against Lynch and Singh. Those cases make clear that a board's order is final for the purposes of starting the clock for the 30-day filing deadline for a petition for review if the only reason for the petition is that the government is demanding for voluntary departure. So the only question really before the Court is whether it follows its own precedent and the government's position is that it should. I know that Petitioner has made a big deal in his brief about how the government has previously taken the position that the rule should be otherwise, that we should wait until everything is done, but the Court has rejected that and we now have precedent. I would note that the Singh Court specifically noted that it had waited to see if the Court wanted to rehear the issue in the Rizzo case. The Court declined to do so. So I think we're safely and squarely now in the realm of settled law. So while I understand that there may be a certain amount of, it could be argued that there is not the greatest logic to the rule, it is the rule and it is the precedential rule of this Court and we believe the Court is bound by it. And of course, as I'm sure your honors are aware, a three-member panel shouldn't overturn a prior panel decision by the Court. One of the arguments that Petitioner raises in his brief in trying to distinguish Rizzo from the current case is he argues that Rizzo didn't address exactly what we have here, which is that where somebody files a petition for review on the actual order that ends up either granting or denying voluntary departure. But that really shouldn't make much of a difference because that would essentially completely nullify the rule in Rizzo where Congress has said you only have one chance on the 30-day clock and if the Court were to take that interpretation of Rizzo, that would essentially give Petitioner two chances to file a petition for review. He could file after the first board order and after the voluntary departure. I think that would run afoul of the Supreme Court's decision in Stone against INS, which came up, of course, in the motion to reopen context, where the Supreme Court has made clear that separate petitions for review have to be filed for separate final orders of the agency. So, I mean, I think that's what Petitioner is arguing. Roberts. Well, that does suggest, then, that under the rule of Rizzo, there are two different opportunities. Now, granted, our review of voluntary departure is extremely limited, but it's not entirely extinguished, so that if we follow the rule you advocate, we do have, in fact, or would have in this case. Mr. Perez-Castillo did have the opportunity, which he may not have appreciated, to seek review after the BIA's decision, and he would have had another opportunity limited to the voluntary departure piece, and since he was granted voluntary departure, he wouldn't have had anything. But suppose for a moment that was denied. He would at least in theory have had the opportunity to petition a review at that point, as he did here, except that the petition would have been limited to whatever issues there were on the voluntary departure piece. So I'm not sure the current rule is quite as simple as you might be characterizing it. Well, I think Your Honor's characterization is correct, but that isn't any different, for example, than the motion to reopen context, right? We have these situations where you can produce separate petitions for review, but again, that brings me back to the Supreme Court's decision in Stone v. INS, which recognizes these situations and says that separate petitions for review have to be filed. As it's applied to this case, you're correct that that separate petition for review would be limited solely to the issue of voluntary departure, but because he didn't file a petition for review on the prior board order that addressed the merits of asylum, withholding, and CAT, he has lost his ability to petition for review on those particular issues. Given the state of the presidential case law in this court, I don't really know how we could get to a different conclusion. Once the case is back before the IJ to consider voluntary departure, could some other issue come up? I mean, I understand the premise of the exchange you just had with Judge Clifton, but what if something new happens to the family in the type of way we would usually see in a motion to reopen? Could that come up in that proceeding about voluntary departure? Well, I think you may have answered your own question in the question, because you mentioned it's sort of the same as the context of the motion to reopen, right? The applicant for relief can always apply to move to reopen his case and produce another final order of removal. The board always has sua sponte authority to reopen on any discretionary matter that it finds applicable. And, yes, the immigration judge can also reopen if he or she determines that there is some other issue that needs to be addressed or resolved. Is that kind of an understood procedure? So if someone is in the voluntary departure proceeding part of this and raises something new, is it clear that what you do at that point is reopen the earlier proceeding or the asylum part of this proceeding? That's a little bit trickier. It depends on a few things, I think. It depends on the scope of the reason that it was remanded. It depends on if the board says we're remanding solely for the issue of voluntary departure. I think the IJ would be limited to solely address the issue of voluntary departure. There are cases that have said, I believe the petitioner actually cites the case, it's either MD or OD, I can't remember, where the board has said that the IJ, if the board doesn't have limiting language, it retains jurisdiction to consider any other issues that might be pertinent. But as a practical matter, you don't usually see a situation where the immigration judge says, okay, well, I'm denying asylum, it's been remanded for voluntary departure, and I'm just reversing without anything else the previous grant of asylum. There would usually be some either additional evidence, additional testimony, some other factor that would make it akin to a motion to reopen, right? Where you have either new evidence or something in the case has changed. Maybe the administrative record has become stale and the previous evidence is no longer pertinent. But I don't think I've ever seen a case in which the agency just reversed its prior decision without anything else coming into play. But to answer your honest question, I think the question your Honor, I think, was asking was, is the scope of the remand limited? If the board doesn't limit it, I think under board case law, the IJ can reconsider other issues. And so then what would that do to whether you have to appeal earlier or later? Well, I suppose it would depend on what the IJ addressed. I mean, if the IJ knew. But you don't know that. The person doesn't know that. At the first, at the time of remand, when they have to decide whether to address anything else. Well, presumably they would be asking the IJ to address anything else. I don't think the IJ would address something that wasn't requested. That wouldn't really make a lot of sense. I suppose it's theoretically possible. I've never seen it happen. We have sua sponte reopening, which is never, of course, actually sua sponte. So maybe theoretically it could. But it's hard to visualize how it would ever happen unless the petitioner or the court had an opportunity to bring to the IJ's attention. Exactly. And look, all of these sort of weird procedural issues were raised in the other decisions that have ultimately determined that even if a remand for voluntary departure happens, that's still considered a final order. It's not like the court would. These cases that have said that the IJ retains jurisdiction to do other things, these cases predated Rizzo. They predated Pinto. They predated Singh. So the court had an opportunity to consider these issues in the prior cases, but ultimately came to the determination that it came to, and the government's position that that precedent is applicable here. This case is mostly on all fours with those cases, in that the board order is the same in those other cases, in that it remanded for the sole purpose of voluntary departure. I understand both what your duty is in this case in terms of sustaining the agency's decision, but as a policy proposition, would you agree that it would be desirable if there in any context, and this problem comes up in context outside of immigration, it would be easier if we had one clear, single date when you file an appeal or bring a petition. I remember going to a CLE program back when I was practicing, and a Hawaii State Supreme Court justice said, it gets confusing sometimes, so if in doubt, file another notice of appeal. You may have five of them, but it's better than not having the one that you need. And the law is complicated in that way. In a field where Petitioners are often appearing pro se or with perhaps the help of somebody who's not entirely learned with the law, it seems to me there's a powerful policy reason for preferring a single, clear date. Our current precedent doesn't permit that, and I understand that. But would you have anything to say with regard to the proposition as to whether it would be desirable to have a single, clear date? Sure. Well, I would respectfully note, and Petitioner correctly points out in his brief, that the government's position prior to this case was exactly that. In Abdi Salon, in Bizot, in Singh, we took that position and we argued for that position. We argued that the court's decision in Rizzo was wrong. The only reason that I know of that we're taking this position today is that we lost and we are bound by precedent. I agree that it would probably be simpler, particularly for pro se litigants, to have a bright line date on all of these situations. But, you know, given that the court has declined to take that up on review in Rizzo and reconsider that, I don't know when settled law becomes entrenched law, but, I mean, we're pretty close to that line, right? Justice Kavanaugh was asked that question several times. It's a hard question to answer. Right. So I certainly think at least the Solicitor General's position was exactly that, that as a policy matter we should have that bright line rule. If this case were to be considered en banc or to be reconsidered en banc, I can't say that his position wouldn't be the same. I don't know what his position would be, whether it would be altered. But, I mean, I don't want to speak for something that I don't know, but in my experience he generally tends to maintain consistent positions before the courts in that regard when they go up on appeal to the Supreme Court. So I agree as a policy matter, and the government previously agreed that as a policy matter that would probably be the best course. But, nevertheless, the precedent is what it is, and we are bound to follow it for the time being. So unless there are any further questions from the court, we would respectfully request that the petition for review be dismissed for lack of jurisdiction. Thank you very much for your time. Thank you, counsel. We'll give you a minute for rebuttal. Thank you, Your Honor. So what I'm hearing from my colleague on the other side is that it must be the case, and in response to Judge Clifton's question, there is jurisdiction over the ‑‑ there's limited jurisdiction, thanks to the REAL ID Act, over questions of law and constitutional issues that arise from voluntary departure. There also is the possibility for, because remands are effective for any purpose, there is the possibility for the remand proceeding to extend beyond voluntary departure. And that doesn't require a reopening or anything like that before the agency. The remand is effective for all purposes. The IJ is free to consider other issues. So there are examples we cite in the brief, INRI MAS, where a noncitizen failed to comply with the terms of a student visa. If you were going to write this case, how would you distinguish Pinto? Pinto, Your Honor? I would say that neither Pinto nor ‑‑ although Pinto and Riso both provide that there is a final order of removal from the BIA's remand order, they do not provide that that's the only, only ‑‑ When we write, we don't say, and we really mean it. I mean, taking the words themselves, wouldn't you have to go in bank to change this? You know, we have a responsibility, regardless of policy matters, we can't just jump off as a panel with policy matters. We have to deal with cases. And I don't see your argument where you ‑‑ I can see your argument on it in bank, but I would have difficulty writing a case with a straight face overruling Pinto for this case. Your Honor, we're certainly not asking the panel to overrule Pinto. We recognize that there's ‑‑ that there is some tension between Pinto and the position we're taking here, but the ‑‑ Tension? This Court has recognized that there's a need to construe the immigration laws in favor of providing review from orders that would otherwise go unchecked. No. That's our policy. But there's a difference between a policy and actual cases, cases that set us up. That's the difficulty of our court. I appreciate that, Your Honor. But in Coroboragon v. Holder, this Court recognized that there is jurisdiction over, as restored by the REAL-ID Act, there is jurisdiction over petitions for voluntary departure. So as the government acknowledged, there are ‑‑ there certainly is a situation where, although there is a final order under Pinto and Riso from the BIA's remand order, there also could be a final order after proceedings are complete on remand for voluntary departure. Okay. Thank you. Thank you, Your Honor. Thank you. We really appreciate your pro bono assistance in this case. Thank you for your service. And this case is submitted.
judges: Wallace, Clifton, Friedland